I'm not sure if I'm pronouncing the last one right, but somebody will let me know. Mr. Beeney, am I pronouncing that right? Yes, Your Honor. Okay. So, Mr. Beeney, you have reserved two minutes for rebuttal. Please. That gives you eight minutes out of the gate. The floor is yours. Thank you very much, Your Honor, and good morning, Your Honors. May it please the Court, Garrett Beeney, on behalf of Appellant to Court of Therapeutics. Your Honors, we respectfully submit that this is one of those rare cases in which an arbitration award should be modified based on violating specific and clearly defined federal law and policy and condoning a specific illegal act and manifestly disregarding the law of preemption in allowing Alkermes to retain $65.6 million in royalties illegally received under federal law. The tribunal recognized that the restitution damages was the appropriate remedy for the violation of federal law and frustrated that policy by then recognizing a New York State doctrine to limit that award that was required by federal law. What's the federal doctrine? You're talking about preemption. Obviously, it has to be a manifest disregard for the law, but none of the Supreme Court cases that said that these agreements are unenforceable, Brouette, Kimball, or Scott Paper, which you cite, none of them address the remedy. So for you to prevail here, there would have to be some rule of law, federal rule of law, that says if a contract is unenforceable, it's mandatory disgorgement, restitution. So which case addressed what the remedy should be for an unenforceable agreement? Which case? I think Kimball and Brouette do address that, Your Honor, but I think there's multiple answers to your question. The first answer I would offer is that the tribunal decided that restitution was the appropriate remedy for the federal law violation. Using New York law, right? They used New York law, right? Not the violation. The violation was federal law. No, but for the remedy, they relied on the New York voluntary payment doctrine, right? And the case comes to this Court with both parties seeking to confirm that the panel's remedy for the violation of federal law was restitution. And then I think the second part of the answer — Well, but you had asked for the Court to consider general contract damages or unjust enrichment under New York law, right? We did, and the tribunal's response was that when they found a violation of law under Brouette, Lott, Kimball, and other Supreme Court cases, the appropriate remedy was State restitution, but the violation was not State law. It was federal law. And, indeed, I wonder — Just to clarify, you were seeking restitution pursuant to State law, substantive law, correct? As a remedy. Yes, as a remedy. But the violation was federal law. I understand. Yes. Could you seek that? Let's say, setting aside the issues here under Brouette and Kimball, could you have sought restitution 10 years down the road, 20 years down the road? I think, Your Honor, that would depend on the balance of policy between federal law, as set by Scott Paper, Brouette, Kimball, and other Supreme Court cases, and State law. Certainly federal law recognizes limitations periods, but this case doesn't address Wouldn't the tribunal apply State law statute of limitations to the remedy of restitution under State law? Yes. And then the question would arise, as it does in this case, as to whether that application of State law frustrates, as it does here, the clear federal law and policy that Worlty's received after expiration. Wouldn't the statute of limitations frustrate that same policy? It could, but it would be a balance that's different, and certainly it wasn't litigated. But the analysis No, I'm not saying there was a statute of limitations problem here. I'm just trying to understand the principle that you're asserting. I think the principle is, is that in looking at other State limitations on the remedy for the violation of federal law, there would have to be a balance between what the federal law policy is and what the State law policy is on limitations, and that is whether the State policy frustrates the full objectives of Congress under the Supreme Court's English case. So what case resolves that balancing question that you just articulated that was manifestly disregarded by the tribunal? Well, I may answer that if I may, but let me just take a little bit of a footnote to that, which is, of course, manifest disregard wouldn't apply to the analysis of the fact that the tribunal's award violated federal law, violated public policy, and engages the Court in condoning an illegal act. But to get to Your Honor's question as to manifest disregard, it is Brulotte, Kimball, Scott paper, all of which establish that any payment, that any receipt of royalties post-patent expiration are illegal per se. It is a categorical principle that parties may not receive. But that doesn't address remedy. They don't address what the remedy should be, even if it's illegal. That doesn't necessarily mean that you're entitled to restitution, you know, as far back as Judge Nathan was pointing out, as far back as, I guess, you seek. There's no federal rule that says the remedy is mandatory restitution no matter what the circumstances. But, Your Honor, how do you not interfere with the federal law and policy so clearly articulated in multiple Supreme Court cases? Can I interrupt? I mean, because it seems to me in the arbitration you yourself acknowledged that neither Brulotte nor Kimball addressed damages. And if they, the Supreme Court cases, didn't address damages, then how is there an explicit and clear rule that you get all the damages you're requesting? Well, respectfully, Your Honor, I'll answer that. But I think respectfully that's not the right question, because the panel did decide that that was the correct rule here, that when you violate Brulotte and Kimball, restitution is the remedy. And the case comes to this Court with both parties seeking confirmation of that issue. So I think the question here is slightly more nuanced. It is can the panel, having made that decision, then apply state law to limit what it had already said federal law requires? And I think while Brulotte and Kimball do not address damages because the circumstances there were not a damages case, I don't know how you possibly effectuate what Brulotte, Kimball, Scott-Paper, and other cases have said without ordering restitution. What could possibly be the remedy to further the federal policy and law that the The only other... But the Supreme Court hasn't announced a rule that you get every penny back from the beginning of time. Like, they haven't announced that rule. There might be good reasons not to have such a rule. And since you have the burden of establishing a violation of public policy, I think the lack of a clear case articulating that policy is problematic, don't you think? I don't, Your Honor. And for these reasons, the public policy that is announced in these cases is that no royalties may be collected, none. No royalties may be received. It's unlawful per se. It enlarges the monopoly of the patent beyond that set by Congress, whatever the legal device employed. The invention must be free for all to use post-expiration. It seems to me respectfully obvious that the remedy for effectuating those policy and law announcements has to be the disgorgement of the illegal royalties you receive. I can't imagine that Congress or the Supreme Court is that worried about folks who are sleeping on their rights for a decade. It doesn't happen very often. And so I don't think that that is going to be an overarching concern from public policy perspectives. But, I mean, what you're effectively saying is that New York's voluntary pay doctrine or anything like it is just anathema and it is no contemplation that the Supreme Court or anybody else would think that that's an acceptable rule, right? I think that that might not say it quite that aggressively, Your Honor. But I think it is clear from the Supreme Court cases that allowing someone to receive, extend the patent monopoly, and that there is no remedy for the adjudicated violation which the panel found. If the remedy is not disgorgement, how do we effectuate the policy? So not to be repetitive, but to go back to my hypothetical of a statute of limitations problem, that would be true if a state law barred a restitution claim as a matter of statute of limitations, right? What you just said. I think it could be. But I think there are different interests with statute of limitations. Right. So somebody has to do that analysis. Somebody has to say, well, we have to figure out, even though there is this Federal rule of an unenforceability prospectively, that would mean that a state law can't apply a statute of limitations without overriding that Federal interest. And if you had a case that said that and the tribunal disregarded it manifestly, then you would have an argument. If you don't have a case that said that, it would be hard, and the tribunal came out the other way, right or wrong, what is it that they would be manifestly disregarding? I think it is the policy that is announced in the Supreme Court cases. And if disgorgement is not the remedy that comes implicitly from the policy announced in those cases, then how do we effectuate Federal policy? We've allowed alchemies to receive royalties that the Supreme Court has declared to be illegal. How do you effectuate that without disgorgement? We've allowed alchemies to extend the patent monopoly that Congress has limited. Yeah, that's great. But, I mean, you decided to do this via arbitration. And so if you want us to explore and articulate what the Federal law or the relationship between the Federal law and the state law should be, great. You can do that. But not in this case. You've got an arbitration award. And so as long as there's a colorable basis for the panel to the tribunal to have done what it did, you're kind of in the soup, right? Well, that is certainly true with respect to the third argument we've been making, Your Honor, about manifestly disregarding preemption law. But it is not true with respect to the other two issues that we have raised. Under this Court's decisions in Schwartz, there is no deference to the tribunal when the argument is that the tribunal violated explicit public policy. There is no deference to the tribunal when the argument is that the disrecorded You said like two minutes ago that the Supreme Court's, in response to Judge Nathan's question, it was implicit, right? You said it was implicit in the Supreme Court's decision that disgorgement was the remedy. And now you're saying it violates public policy because it's explicit. So that can't be. The implicit is the limiting of the award. The explicit is the policy. The policy is – it could not be more explicit in just those three Supreme Court cases, much less several others. The policy is, is that all benefits from patents must end at expiration. For you to win the policy, the remedy has to be explicit. That's what this is about. It's about the remedy. Well, again, Your Honor, forgive me for repeating myself, but the case comes to Your is the remedy for the violation of that policy. So I don't think that that's really a question in front of the court. All right. Well, we have gone over, but you've reserved two minutes for rebuttal, Mr. Beeney. So we'll now hear from Mr. Burgess. Thank you very much, Your Honor. Thank you. Good morning, Your Honor. Brian Burgess for Alkermes. ACORDA is seeking to overturn an arbitral award based on a new legal theory that it never raised to the arbitrators, that no court has ever adopted, and that several courts have rejected, as the arbitration panel and the district court recognized. ACORDA's theory fails for multiple independent reasons, and I'm happy to address any of them. I'd like to focus on two issues in particular. Even assuming – first, even assuming manifest disregard is available as a I don't think it comes close to satisfying that highly deferential standard here. And second, which my friend referenced at the end of his colloquy with the court, there's no public policy exception that allows him to escape deference here. That argument was not presented in his petition to the district court and is clearly not applicable to the type of claim he's bringing here. So I'll start with manifest disregard, which is, as this Court's questions indicate and the Court's precedents establish, is a highly deferential standard. It's not a place to establish new precedent, to second-guess debatable legal judgments. It's limited to context in which an arbitration panel effectively goes rogue, that there's clearly presented authority that is controlling, that they know of, and that they refuse to apply. That clearly did not happen here with the three distinguished retired judges that issued the decision in this case. They concluded, they agreed with ACORDA, that BUAT limited the prospective enforceability or prevented the prospective enforceability of these agreements. As to a remedy, they relied on state law, on New York's law on restitution, to conclude not as a remedy for federal violation, as I think my friend was suggesting, but as a matter of New York restitution law, when you have a contract that's found unenforceable, there might be instances in which you're eligible to obtain restitution. But they specifically limited that to only payments that had been paid under protest. And as they were applying a New York remedy law, it naturally followed that New York equitable defenses, like the voluntary payment doctrine, were part and parcel of that. So there was no manifest disregard. And the arguments to the contrary suffer from several problems. One, it was never presented to the tribunal. This new argument that federal law creates this mandatory preemptive remedy was not something that ACORDA ever argued to the tribunal. Effectively, it argued the opposite. It argued that BUAT and Kimball were silent on this question. You can see that, for example, at page 191 of the joint appendix, 213 through 215, and 590. Right. Well, maybe the argument was that the federal law makes the contract unenforceable, but the remedies available for an unenforceable contract are still state remedies. That's right, that they were still state remedies. They argued that BUAT and Kimball did not prevent the application of a state remedy because, remember, we pointed this out in our briefing at a relevant context, is that in the analogous situation, you're dealing with a patent that has been found to be invalid, which the Supreme Court in the Lear case recognized that a licensee, you can't be stopped, you're allowed to bring that challenge to prospective validity. But federal courts have found that there's no remedy for a refund. You can't seek that sort of claim. So I think what ACORDA was arguing before the tribunal was we shouldn't apply that rule. The federal law doesn't prevent the state from imposing a remedy. But it never argued that federal law requires a remedy and that it would supersede any state law equitable restrictions on recovery under restitution. And they had an opportunity to argue about the New York Voluntary Payment Doctrine. I know there's a suggestion in their briefing that it was sprung upon them, but this was argued in both their summary judgment briefs, their affirmative brief and their opposition. It came out earlier in the case in a letter briefing. You can find this on page 515. So they had an opportunity to argue it, but they never raised the argument they're making now. And I think a reason they didn't raise that argument is it has no support. The only court cases that have addressed this, the federal cases that have addressed this remedy question, the refund question, not whether it's prospectively unenforceable, have held that there is no right to a refund. That's the Zila case that we cite, the Tessera case. And there, ACORDA's argument as to those cases as well, we think they're wrongly decided or distinguishable. And that's just not the question when you're doing manifest disregard. Do you think under manifest disregard, if there is a single district court decision that goes the other way, even if we think that decision is wrong, that you can't say that the tribunal manifestly disregarded the law? I think in the absence of precedent from this court or from the Supreme Court, yes. So the existence of the two district court opinions and whether they're holdings or dicta doesn't really matter for your argument. The point is that there's not a counter-controlling precedent. That's right. I think it cannot be that there was no colorable basis for the tribunal to have made this determination when there's no cases that they can cite you on their side to support the decision and the only courts that have engaged with the question came out in our direction. I think that's just a fortiori that cannot be manifest disregard under that situation. Well, Ms. Dubini's point was that the no colorable consideration, that's only with respect to manifest disregard and not with respect to public policy problems. What's your response to that? Sure, yeah. So that goes to the second point. First, they didn't make that argument in the district court. It is not in their petition. They have now presented it as though it's a standalone argument, and you can see that on page 24 of their reply brief that this is a different argument than manifest disregard. It's made solely in the context of manifest disregard and their petition and their briefing. You can see under the district court's practices, you have to do a summary letter. You can see that at 418 through 420. You can also see in the Federal Circuit's decision, this is only raised in the context of manifest disregard. On page 29 and 30 of their reply brief, they go through the multiple times where they invoked the phrase at least public policy both before the tribunal and the district court. Do you think that wasn't enough? Well, they certainly invoked the phrase, but it was always in the context of manifest disregard. It was not this idea that there's a standalone doctrine applicable here that de novo review in an absence of deference should apply. So we do think the argument is forfeited, but we also just think it's not, it's clearly not applicable here. First, there's the issue that Your Honor was discussing earlier, that there just is not a clear Federal policy on the specific question, on the remedy question. So we think that defeats the argument, but also it's just a category error to invoke this sort of issue here because the public policy issue arises when the order itself, the enforcement of the order, would violate public policy. This Court's decision in the Niagara-Mohawk case runs through that in some detail about how the analysis is supposed to go. There's no serious argument that the order here, enforcement of the order, which is something a court is also seeking, it was an order that prospectively had this agreement not be enforceable. It's an order that entitles them to $16 million of damages. They just want more money. And that's, they can make that argument under manifest disregard to the extent that's even applicable to modification, but it's not the kind of argument that allows them to avoid deference to the panel because they are saying, well, there's a public policy interest. Just asking for a revision of the damages award and asking for more money just is inherently not something that can fit within the public policy doctrine. Well, if it was a case, one of our cases, or a Supreme Court case, that said the remedy here is full disgorgement, that could be, that could violate, in addition to being manifest disregard for the law, that could violate public policy as well, then, right? I don't think, I think the right way to approach that would be under manifest disregard, and really the question there is just what level of deference you're applying and can you do de novo review. If there was a clear precedent that said you must disgorge and that was presented through the arbitration panel and the arbitration panel said we don't... But you're suggesting just because they're getting some money that doesn't, they can't violate public policy because they got something that can't be, right? No, I think that is right in terms of a public policy doctrine that allows de novo review in the courts. Now, again, there could well be manifest disregard if there's clear precedent that says you must provide this remedy and it's disregarded. This Court's case in DeRusso is, I think, instructive on this point where the argument there, and it was, they tried to raise it on both manifest disregard and public policy grounds, was that we were entitled by federal statute to attorney's fees when we prevailed in the age discrimination claim. And there was no dispute that that was correct. The relevant federal law provided for the attorney's fees. But they had not clearly raised that argument before the tribunal. They had argued that we are entitled to fees but had not made clear that it was mandatory, had not provided the relevant statutory language. So the Court held no manifest disregard because of that, because it was not clearly presented to the tribunal, and no public policy exception. That's not the kind of situation where you're seeking to enhance your monetary recovery that allows for a de novo review. And if we allowed that, it would lead to dilution of the manifest disregard standard and the deference to arbitrators. Instead, public policy exception is reserved for situations where the order itself is going to violate public policy. For example, this Court's Newsday decision where the order required the reinstatement of an employee who had engaged in serial sexual harassment. And the idea is the Court is not going to be engaged in that. We are not going to enforce that because doing that will itself perpetuate a violation of public policy. An award that gives a sophisticated company $16 million, but not more than that because it's left on its rights, is just not the kind of thing that could implicate that exception. You don't think we need to decide the question of whether a manifest disregard applies to modification, correct? I think you don't need to decide it. It's not a jurisdictional question. You know, the district court agreed with us that it probably did not apply in this context post-Hall Street and after this Court's decisions addressing it. That's what it said. Even so, there's no manifest disregard. I certainly think the Court has the ability to proceed in that way as well. All right. Thank you, Mr. Burgess. Thank you very much. We'll now hear from Mr. Beeney for two minutes of rebuttal. Thank you. If I may start with the standard of review, this Court's decision in Schwartz quoting the Supreme Court in W. Warren Grace, the Court's decision in DeRusso quoting United Paperworkers, set out that it is for this Court, without deference to the tribunal, to decide whether an award violates public policy or whether an award would be the Court's condoning an illegal act. Okay, but it's got to be an explicit public policy, well-defined and dominant, ascertained by references to the laws and legal precedents, right? Absolutely, Your Honor. I mean, I'm not sure there's a tremendous amount of daylight, candidly, between public policy and manifest disregard under Schwartz. What am I missing? I think the difference is that the manifest disregard is in the context, and the reason we give deference to the tribunal is because, typically, we're looking at a dispute among parties that doesn't have wider implications like this panel decision. Yes, but it's still requiring that there be something quite explicit, and you haven't been able to point to anything explicit about remedies with respect to a patent that has expired. But it's not the remedy, Your Honor. It's the policy, and the policy necessarily dictates what the remedy is. I don't know what could be a remedy other than restitution to effectuate the policy. You keep saying that, but, I mean, no court has said that, right? No court has said that, nor has any court not said that. Oh, right. But the lack of an explicit public policy seems to be fatal to your argument. But there is an explicit public policy. You're saying there's an explicit public policy that expired patents will not be in the contracts with respect to royalties, and expired patents will not be enforced going forward. And you're saying what must follow from that is that anything, any royalties paid after the expiration have to be disgorged and paid in full. And it's not clear to me that the two policies are inextricably linked. I mean, you're making an argument as to why they should be, but no court has said they must be. And absent that, it seems to me this is not an explicit public policy. I think the – I don't want to repeat myself, but the policy about effectuating the limitations on patent rights I think is clear. And then I would respectfully submit. No, no, no. This is all – I mean, I think that the argument that Mr. Burgess just made is this is all about money. I mean, so, I mean, the availability of the use of the patents, you know, what the patents, the information, the utility of a patent after it is expired, anybody can use it, and that's good. That's the goal of the patent laws. It's not really to make sure that folks are getting – who slept on their rights are getting paid back later. It seems to me that there's all sorts of things that will limit the ability of folks who slept on their rights to get paid back later, including statutes of limitations. I think that is one focus, Your Honor, no doubt. But the appropriate focus should not be on a corda. It should be on alchemies. It is receiving and accepting what is illegal under federal law. And if the remedy is not giving that up, how do we give effect to federal law? It is unlawful for them to have received these royalties. But under the – again, this is Judge Nathan's point. But under that theory, then, statutes of limitations also are against public policy with respect to – I think there are different – I think there are different policies that are involved. And, again, if I can come back to, if I may, just this Court's – the issue before this Court, the tribunal held it 229 of the record that restitution damages are, quote, quote, awarded where a party renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy. So, again, the case comes here with both parties seeking confirmation that the appropriate remedy for the violation of federal law is restitution. That is not subject to dispute here. And if we take that, which I respectfully submit is the law as both parties seek confirmation of that, then the question is, can you then use State law to limit the restitution that the panel found federal law requires? And for the reasons stated in our briefs, Your Honor, I would respectfully submit that Zillow and Tessera have nothing to do with the dispute that's here. There was no – if I may just address forfeiture. There was no forfeiture of these issues. It is not correct to say that public policy and law were raised only in the context of manifest disregard. As the panel knows, as we've said out in our brief, a quarter was prevented from raising these issues before the tribunal. And if one applies this Court's standards in Higgins, Looney, TransPerfect, I think a quarter did more than is necessary to raise the issue. In terms of public policy, a quarter said before the district court that collecting royalties post-expiration violates the public policy of the federal patent law system at 44. That was not in the context of manifest disregard. I'd also cite 52.14.651 in the context of condoning an illegal act. A quarter told the district court that the tribunal ruling violates the fundamental rule that no court will lend assistance in any way toward carrying out the terms of an illegal contract. That's at 77. It repeated those arguments at 50, 420. So there was no forfeiture of these arguments, respectfully, Your Honors. Thank you very much. All right. Thank you, Mr. Greeney, Mr. Burgess, and all involved. We will reserve decision. Thank you.